UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN MEHNE,                                          DECISION
                                                        and
                                    Plaintiff,        ORDER

-vs-                                                 22-CV-6110 CJS

ROCHESTER PSYCHIATRIC CENTER,
PHILLIP GRIFFIN, Executive Director,
JOSEPH GADOWSKI,

                                    Defendants.

_____

INTRODUCTION

*Pro se* Plaintiff John Mehne ("Mehne" or "Plaintiff") is currently a patient at the

Rochester Psychiatric Center ("RPC") who filed this action seeking relief pursuant to, *inter*

*alia*, 42 U.S.C. § 1983 alleging that RPC and its Executive Director, Phillip Griffin

("Griffin"), violated his rights under the U.S. Constitution when they failed to protect him

from being punched by another patient, Joseph Gadowski ("Gadowski").  Now before the

Court is a Motion to Dismiss the Complaint by RPC and Griffin.  For the reasons discussed

below, the motion to dismiss is granted in part, including as to all federal claims, and the

remaining state-law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

BACKGROUND

On March 3, 2022, Plaintiff, commenced this action proceeding *pro se*.  According

to the Complaint, Plaintiff "is a C.P.L. [Criminal Procedure Law] 330.20 patient (Criminal

Procedure Patient) at RPC."   The Complaint alleges that on February 12, 2022, at

approximately 5 p.m. on Unit F-3 at RPC, Plaintiff was punched in the face by Gadowski,

an RPC patient who was known by RPC staff to be assaultive. The Complaint alleges that because of Gadowski's history of assaulting other patients and staff he was supposed to have been kept isolated from other patients and observed by a staff member at all times. The Complaint indicates, however, that because of someone's "negligence" and/or "dereliction of duties" Gadowski was allowed to be alone in a hallway with Plaintiff, whereupon he punched Plaintiff in the jaw. The Complaint states that no other staff or patients witnessed the assault but that the incident should have been captured by security cameras. The Complaint states that following the assault Plaintiff experienced bruising, pain, swelling and loose teeth, for which he was treated by medical staff.

The Complaint alleges, in part, that Plaintiff's "civil rights" were violated. *See, Complaint* ("My civil rights were violated by reasons of negligence and dereliction of duties.").   The Complaint also contends that the alleged actionable conduct by RPC and/or Griffin occurred "under color of state law:" "Under color of state law all rights regarding safety are implemented by the New York State Office of Mental Health, Psychiatric Centers, Article 28 General Hospital Psychiatric Units, and Article 31 Private Psychiatric Hospitals."

The Complaint purports to sue RPC, Griffin and Gadowski.  With regard to Griffin, the Complaint alleges that he allowed an unsafe condition to exist at RPC by failing to hire adequate security personnel. The Complaint demands money damages in the amount of one million dollars and injunctive relief ordering that Gadowski be transferred to a different facility.

On April 12, 2022, the Court issued an Order (ECF No. 4) granting Plaintiff's application to proceed *in forma pauperis*.  The Court also screened the Complaint pursuant to 28 U.S.C. § 1915, and observed, in pertinent part:

> Construed liberally, the Complaint here arguably purports to state three types of claims: 1) a claim for violation of Plaintiff's patient rights under New York Public Health Law ("PHL") Article 28 and/or New York Mental Hygiene Law ("MHL") Article 31; 2) common-law tort claims (e.g., assault/negligence) under New York State law; and 3) a federal claim under Section 1983 for a "failure to protect" in violation of Plaintiff's Fourteenth Amendment Due Process rights.

*Id*. at p. 4.  The Court determined that the Complaint failed to state any actionable claim under the PHL or MHL, but permitted the state-law tort claims and § 1983 claim to proceed.[1]  Subsequently, RPC and Griffin were served with the Summons and Compliant, but Gadowski has not been served.

On June 1, 2022, RPC and Griffin filed the subject motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 9)  The application contends that all claims seeking money damages against RPC are barred by the Eleventh Amendment, since RPC is a state agency that has not consented to be sued in federal court, and that the Section 1983 claim against RPC also fails because it does not plausibly allege *Monell* municipal liability.  The motion further maintains that any claim for money damages against Griffin in his official capacity is barred by the Eleventh Amendment, and that the Section 1983 claim against him also fails, because it fails to allege that he was personally involved in a constitutional violation and because he is entitled to qualified immunity. Lastly, the application indicates that Plaintiff's request for an order transferring Gadowski

---

[1] *See, id*. at pp. 4–6 ("It may be that Plaintiff will not prevail on his state-law tort and Section 1983 claims. However, at this early stage the claims may proceed.").

to another facility should be dismissed, since Plaintiff has no right to decide where he or another inmate should be housed.

On June 2, 2022, the Court issued a Motion Scheduling Order. (ECF No. 11).  On June 13, 2022, Plaintiff filed a timely opposition to Defendants' motion, mis-captioned as a "motion of Opposition," ECF No. 15.  Liberally construed, Plaintiff's response does not directly address Defendants' arguments but reiterates that Griffin was negligent in protecting Plaintiff's safety and security.

The Court has carefully considered the parties' submissions.

ANALYSIS

<u>Plaintiff's *Pro Se* Status</u>

Since Petitioner is proceeding *pro se*, the Court must construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

<u>Claims for Money Damages Against RPC and Griffin in His
Official Capacity are Barred by the Eleventh Amendment</u>

RPC and Griffin first contend that Plaintiff's claims for money damages against RPC, and against Griffin in his official capacity, are barred by the Eleventh Amendment, and the Court agrees.

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. And, longstanding Supreme Court and Second Circuit precedent instructs that the Eleventh Amendment applies equally to suits brought against a state and state employees in their official capacities. Thus, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity

4

when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration and quotation marks omitted). But, "Congress did not abrogate the States' sovereign immunity when it enacted [ ]§ 1983 ..., and New York has not waived its immunity." *Walker v. NYS Just. Ctr. for the Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 246–47 (S.D.N.Y. 2020) (collecting cases).

Because [Rockland Psychiatric Center] is "part of the New York State's Office of Mental Health, a state agency," it is an arm of the state. *Moultry v. Rockland Psychiatric Ctr.*, No. 17-CV-4063, 2018 WL 5621485, at *2 (S.D.N.Y. Oct. 30, 2018); *see also Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 430 (S.D.N.Y. 2017) ("RPC, a state psychiatric facility operated by the New York State Office of Mental Health ... is an arm of the state." (collecting cases)).[2] Therefore, RPC and its employees in their official capacities are immune from suit under the Eleventh Amendment, and Plaintiff's claims against Moving Defendants in their official capacities are dismissed.

*Walker v. George*, No. 21-CV-6070 (KMK), 2022 WL 2290634, at *3–4 (S.D.N.Y. June 24, 2022) (some citations omitted).  RPC is similarly an arm of New York State, and Plaintiff's claims for money damages against RPC and Griffin in his official capacity, under any theory of liability, are therefore dismissed.

<u>Demand for Prospective Injunctive Relief is Barred as Against RPC and Denied as against Griffin</u>

Plaintiff also requests injunctive relief in the form of an order directing that Gadowski be transferred to a different facility.  Insofar as that claim is asserted directly against RPC, it is barred.  *See, Wang v. Off. of Pro. Med. Conduct, N.Y.*, 354 F. App'x

---

[2] *See also, Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 430 (S.D.N.Y. 2017) ("At least two cases have held that [Rockland Psychiatric Center] is an arm of the state, and other courts have found that similar state-run psychiatric institutions constitute arms of the state entitled to Eleventh Amendment immunity.") (citations omitted); *Freeman v. Rochester Psychiatric Ctr.*, No. 12-CV-6045T, 2016 WL 851782, at *3 (W.D.N.Y. Mar. 3, 2016) ("OMH and RPC are New York State agencies and are entitled to sovereign immunity for these claims under the Eleventh Amendment.") (citations omitted).

459, 461 (2d Cir. 2009) ("Insofar as Wang's complaint could be construed as seeking equitable relief for an alleged Fourteenth Amendment violation, while such a claim is not barred by the Eleventh Amendment's ban on retroactive damage actions, it too must be dismissed because it does not follow the requirement, established in *Ex Parte Young*, [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ], that a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly[.]") (citation and internal quotation marks omitted).

To the extent the claim for injunctive relief is asserted against Griffin in his official capacity, it is not barred. *See, Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 207 (S.D.N.Y. 2004) ("The Eleventh Amendment does not bar the claims against defendants in their official capacities for prospective injunctive relief, *see Davis v. New York*, 316 F.3d 93, 102 (2d Cir. 2002)[.]").  However, even assuming *arguendo* that Gadowski is still a patient at RPC and that the request is therefore not moot, federal courts generally do not involve themselves in deciding where a particular inmate should be housed, particularly where, as here, for reasons discussed further below, the plaintiff has not demonstrated a violation of a federal right. *Cf., Abbas v. Senkowski*, No. 9-:03-CV-0476(GLSDRH, 2007 WL 2687669, at *2 (N.D.N.Y. Sept. 10, 2007) ("Generally, the Department of Correctional Services has the authority and discretion to determine where inmates should be housed, and when transfers are appropriate. *Tinsley v. Goord*, 2006 WL 2707324 (S.D.N.Y. Sept. 18, 2006). In fact, it is well settled that '[a] state prisoner has no liberty interest in being housed in a particular facility.' *Cole v. Goord*, 2006 WL 3378145 (S.D.N.Y. Nov. 16, 2006) *citing Matiyn v. Henderson*, 841 F.2d 31, 34 (2d Cir.1998). 'In the absence of a violation of a federally protected right . . .  there is no basis for a federal court to interfere in DOCS'

housing decisions.' *Matiyn, supra*.").   Accordingly, the request for injunctive relief is denied.

<u>Standards Applicable to Motions Under Rule 12(b)(6)</u>

RPC and Griffin have also moved to dismiss the Complaint pursuant to Rule 12(b)(6) and the standards for such an application are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his

claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted); *see also*, id. at 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations and internal quotation marks omitted.)

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for

a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal* );

*see also, In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 373 (S.D.N.Y.

2021) ("The plaintiffs claim that discovery of the relevant disclosure schedule may

establish the portion of the purchase price allocated to Myovant shares.  . . .  But "it is

only by taking care to require allegations that reach the level suggesting [a plausible claim]

that we can hope to avoid the potentially enormous expense of discovery in cases with

no reasonably founded hope that the [discovery] process will reveal relevant evidence."

*Twombly*, 550 U.S. at 559, 127 S.Ct. 1955. Because their unsupported speculation does

not amount to a reasonable foundation, the plaintiffs cannot avoid dismissal by claiming

that discovery will reveal a basis for their claim.").

<u>Claims Under Section 1983</u>

Plaintiff is alleging a constitutional claim under 42 U.S.C. § 1983, namely, a failure-

to-protect claim under the Fourteenth Amendment.   The legal principles generally

applicable to Section 1983 claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that
> the defendant is a "person" acting "under the color of state law," and (b) that the
> defendant caused the plaintiff to be deprived of a federal right.

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir.2004)

(citation omitted).  Put simply, to plead a plausible claim under Section 1983, a plaintiff

must allege that she was deprived of a constitutional right by a person acting under color

of state law. *See, Oparaji v. City of New York*, 152 F.3d 920 (2d Cir. 1998) ("To state a

claim under § 1983, a plaintiff must allege that the defendants, acting under color of state

law, deprived him of a constitutional right. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102

S.Ct. 2764, 73 L.Ed.2d 418 (1982).").

"[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. . . . [For example, i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right." *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S. Ct. 1865, 1870–71, 104 L. Ed. 2d 443 (1989) (citations omitted).

"A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority. Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (citations and internal quotation marks omitted), as amended (Feb. 24, 2016). Personal involvement of a supervisory defendant may be shown by evidence that:

> "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal citations omitted).

Additionally, to sue a municipal defendant such as RPC[3] under Section 1983 for a

---

[3] Defendants allege that RPC, a facility run by the New York State Office of Mental Health, is a municipal defendant against whom Plaintiff must allege a basis for *Monell* liability, and Plaintiff does not dispute that point. Additionally, the Court is aware of at least one case in which a state-run psychiatric center has been considered a municipal defendant for purposes of *Monell* liability. *See, Risch v. Hulihan*, No. 9:09-CV-330, 2010 WL 5463339, at *8 (N.D.N.Y. Dec. 29, 2010) ("To the extent that plaintiff is seeking to hold

constitutional violation committed by a municipal employee, a plaintiff must allege a basis

for "*Monell*" liability:

> To plead a *Monell* claim, a plaintiff must allege [(1)] the existence of a formal policy
> which is officially endorsed by the municipality, or [(2)] a practice so persistent and
> widespread that it constitutes a custom or usage of which supervisory authorities
> must have been aware, or [(3)] that a municipal custom, policy, or usage can be
> inferred from evidence of deliberate indifference of supervisory officials to such
> abuses.

*Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x at 13.

"The inference that a policy existed may . . . be drawn from circumstantial proof[.]"

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also, Staten v. Vill.*

*of Monticello*, No. 14-CV-4766 (KMK), 2016 WL 7235796, at *6 (S.D.N.Y. Dec. 13, 2016)

("At the motion to dismiss stage, Plaintiffs need not prove these elements, but they are

required to plead them sufficiently to make out a plausible claim for relief. To do so,

Plaintiffs must allege facts tending to support, at least circumstantially, an inference that

a municipal policy or custom exists.") (Citation and internal quotation marks omitted).

<u>Failure to Protect Under the Fourteenth Amendment</u>

Plaintiff alleges that while he was a pre-trial criminal detainee housed at RPC,

RPC and Griffin failed to protect him from an assault by another patient, Gadowski.  A

failure-to-protect claim by a convicted inmate is governed by the Eighth Amendment,

while such a claim by a pre-trial detainee is evaluated under the Fourteenth Amendment:

---

the municipal defendants liable for the alleged inadequate treatment he received prior to October 23,
2006, such a claim would fail as he has not established that a federally protected right was violated by a
municipal policy, custom or practice, or decision of a municipal policymaker. *See Monell v. Dep't of Soc.*
*Servs. of N.Y.C.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36 (1978). There is no respondeat superior
liability that would allow plaintiff to hold the Department of Corrections or the Central New York
Psychiatric Center liable for the actions of its employees. *See id.* at 691, 98 S.Ct. at 2036.").  Accordingly,
for purposes of this Decision and Order the Court assumes that RPC qualifies as a municipal defendant.

Under the Eighth and Fourteenth Amendments, correction officials must take reasonable measures to ensure the safety of prisoners, including protecting them against violence by other prisoners. *Farmer*, 511 U.S. at 834; *Winters v. Smalls*, No. 1:19-CV-7272 (CM), 2019 WL 3889857, at *1 (S.D.N.Y. Aug. 19, 2019); *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 362 (S.D.N.Y. 2013). Although prison officials have a duty to protect prisoners from violence at the hands of other prisoners, not every injury "suffered by one prisoner at the hands of another translates to constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Instead, the failure to protect an inmate violates the Constitution when correction officials exhibit "deliberate indifference to a substantial risk of serious harm" to the prisoner. *Id*. at 828 (internal quotation marks omitted); *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988); *Winters*, 2019 WL 3889857, at *1. To state a claim for deliberate indifference based on a theory of failure-to-protect under the Eighth Amendment, a plaintiff must allege that prison officials were subjectively aware of an excessive risk to inmate health or safety and disregarded that risk. *Farmer*, 511 U.S. at 837; *Zimmerman v. Macomber*, No. 95-CV-0882, 2001 WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001). A pretrial detainee, however, "may prevail in a [Fourteenth Amendment] claim for deliberate indifference even when a state actor merely should have known of the serious risk." *Winters*, 2019 WL 3889857, at *2 (emphasis in original).

Importantly, "[c]ourts routinely deny deliberate indifference claims based upon surprise attacks." *Parris*, 947 F. Supp. 2d at 363 (citation omitted). For an Eighth Amendment Claim, a plaintiff must generally allege "that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff." *Id*. (citation omitted). Similarly, for a Fourteenth Amendment claim, a substantial risk of serious harm "can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by a plaintiff regarding the altercation or a request by [a] plaintiff to be separated from the attacker." *Scott v. Westchester Cnty.*, 434 F. Supp. 3d 188, 198 (S.D.N.Y. 2020) (citation and internal quotation marks omitted). "A plaintiff can sufficiently plead a failure-to-protect claim 'when [the] inmate inform[ed] corrections officers about a specific fear of assault and [was] then assaulted.'" *Scott*, 434 F. Supp. 3d at 199 (citation omitted). Furthermore, in order to state a claim for deliberate indifference based on a failure-to-protect against a general risk of harm to all inmates at the facility, a plaintiff

must allege that the defendants knew, or should have known, of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff, and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff or mitigated the risk of harm. *See Parris*, 947 F. Supp. 2d at 363-64 (citing *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *6 (S.D.N.Y. Sept. 25, 2000)); *Winters*, 2019 WL 3889857, at *2.

*Vazquez v. City of New York*, No. 121CV01573PAEVF, 2022 WL 2704763, at *10–11 (S.D.N.Y. June 17, 2022), *report and recommendation adopted*, No. 21CIV1573PAEVF, 2022 WL 2704469 (S.D.N.Y. July 11, 2022).

<u>The Complaint Fails to State a Failure-to-Protect Claim</u>
<u>Against Griffin or RPC</u>

The instant case involves an alleged random, surprise attack where there was no prior history of animosity between Plaintiff and Gadowski.  Accordingly, as discussed above, to state an actionable Fourteenth Amendment failure-to-protect claim here, Plaintiff must plausibly allege "that the defendants knew, or should have known, of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff, and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff or mitigated the risk of harm."  However, Plaintiff has not plausibly set forth such a claim.

To begin with, Plaintiff's allegations concerning prior assaults by Gadowski are entirely conclusory.  The Complaint fails to offer any facts to support the bald assertion that Gadowski was "a highly assaultive patient" who had "assaulted staff and other patients," and who required around-the-clock, one-on-one observation, by RPC staff.  The Complaint does not refer to any specific past incident of violence by Gadowski, nor does it explain how Plaintiff would know the details of Gadowski's disciplinary/treatment history

at RPC.  Consequently, the Complaint fails to plausibly allege that Gadowski actually had a history of assaultive behavior such that RPC and Griffin knew of, or should have known of, the alleged risk posed by Gadowski to RPC patients in general.

However, even assuming *arguendo* that those allegations concerning Gadowski's assaultive history are plausible, the Complaint further alleges that RPC had taken precautions to prevent further assaults by Gadowski, by confining him in an isolated location and providing round-the-clock supervision.  Consequently, to the extent Gadowski had evaded those constraints and was roaming free at the time he punched Plaintiff, the inference would be that it was due to an isolated act of negligence by some member of the RPC staff, as opposed to deliberate indifference by either RPC or Griffin.

Similarly, the allegations intended to show personal involvement by Griffin are entirely conclusory and therefore not plausible.  In particular, the Complaint makes only a bald assertion that Griffin "d[id] not provide adequate security personnel for security protocols to help make [the] facility safe for patients, staff and clinicians, visitors and more."  However, the mere fact that Plaintiff was punched by Gadowski does create a reasonable inference that Griffin failed to hire adequate security personnel.  Nor is it plausible that Plaintiff would have any knowledge of staffing decisions made by Griffin.

Additionally, the Complaint fails to plausibly state a *Monell* claim against RPC, since, apart from the conclusory allegations concerning Griffin's alleged failure to hire adequate security personnel, it does not state any facts tending to show an actual custom, policy or practice at RPC involving a failure to protect patients from assaults by other patients.  The Complaint does not, for example, allege any similar instances of attacks on patients by other patients known to be dangerous, except for the conclusory assertion of

14

prior attacks by Gadowski.  Rather, the Complaint offers only a single plausible factual allegation, which is that Plaintiff was randomly punched by another patient on a single occasion.    Moreover, as discussed earlier the Complaint alleges that RPC had taken precautions to prevent further assaults by Gadowski, which is inconsistent with a *Monell* claim against RPC.

In sum, the Court finds that the Complaint fails to state a plausible constitutional claim against RPC or Griffin.  The Section 1983 claim is therefore dismissed.[4]

<u>Leave to Amend is Denied</u>

Ordinarily, a court will not dismiss a *pro se* complaint without giving the plaintiff a chance to amend.  *See, Hariprasad v. New York*, 722 F. App'x at 103 ("Ordinarily, the district court should not dismiss a *pro se* plaintiff's complaint without granting leave to amend when a liberal reading of the complaint gives any indication that a valid claim might be stated. But, here, amendment would be futile, as there is no indication that Hariprasad might plead a valid claim[.]").  Here, the Court finds that amendment as to the Section 1983 claim would be futile, since Plaintiff has given no indication that he can plead a plausible claim against either RPC or Griffin.  As already discussed, the Complaint utterly fails to allege any custom, policy or practice by RPC regarding a failure to protect inmates from assaults by other inmates, and similarly seems to name Griffin as a defendant merely because he occupied a position of authority at RPC.  Moreover, Plaintiff offered nothing of substance in opposition to Defendants' motion to dismiss the Section 1983 claim. Consequently, leave to amend is denied.

---

[4] Gadowski is not a state actor and therefore cannot be sued under Section 1983.

<u>The Remaining Supplemental State Law Claims Are Dismissed</u>

As discussed earlier, in addition to the Section 1983 claim the Complaint asserts "common-law tort claims (e.g., assault/negligence) under New York State law," over which the Court has supplemental subject-matter jurisdiction. However, the Court having dismissed all claims over which it had original jurisdiction, *i.e.*, the Section 1983 claim, it declines to continue exercising supplemental jurisdiction over the remaining state-law claims, pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the state tort claims are dismissed without prejudice.

CONCLUSION

The Motion to Dismiss by RPC and Griffin (ECF No. 9) is granted in part as discussed above. The Section 1983 claim is dismissed. The Court declines to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3), and those claims are dismissed without prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated: Rochester, New York
       December 7, 2022

ENTER:

CHARLES J. SIRAGUSA
United States District Judge

16